**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Thomas MANLEY,
Defendant–Appellant.**

**No. 89–5054.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 6, 1990.

Stewart G. Abrams, Jacqueline Rubin, Asst. Federal Public Defenders, Miami, Fla., for defendant-appellant.

Thomas A. O'Malley, Linda Collins Hertz, Dawn Bowen, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE[*] and COX, Circuit Judges, and CAMP[**], District Judge.

PER CURIAM:

Joseph Manley was charged with one count of bank robbery in violation of 18 U.S.C. § 2113(a), and three counts of bank robbery with a firearm in violation of 18 U.S.C. § 2113(d). Appellant pleaded not guilty by reason of insanity, but was convicted on all four counts. On appeal, Manley argues that pursuant to F.R.E. 704(b), the trial court improperly excluded opinion testimony by a defense psychologist and a psychiatrist. We affirm.

Appellant robbed four separate financial institutions during a one-month period from October 30, 1987 to November 25, 1987. At trial, appellant did not contest his participation in the bank robberies but instead argued that he was insane at the time of their commission. Appellant presented evidence that he suffered from a mental illness known as bipolar disorder, more commonly referred to as manic depression.

The defense qualified as an expert Dr. Mary Frenzel, a clinical psychologist at the Metropolitan Correctional Center ("MCC"). Dr. Frenzel testified that bipolar disorder is characterized by mood dysfunction. A patient suffering from bipolar disorder typically experiences mood swings from a manic phase to a depressed phase, but may be immersed in either phase for months at a time. Dr. Frenzel noted that bipolar disorder is often hereditary and can be treated with anti-depressants such as lithium carbonate.

During Dr. Frenzel's testimony, the following colloquy took place:

Q: Let me ask you a hypothetical question: An individual who is diagnosed as having a bipolar disorder which is manifested by someone who has the suicidal ideations that you referred to, who has used controlled substances, has demonstrated mood swings, there is a family history of depression, manic/depressive or bipolar, would that person—well is the bipolar disorder, would that be considered a severe mental disorder or defect?

A: It is a major mental illness, yes, serious.

Q: And would that person as described be able to appreciate the nature and quality or the wrongfulness of their actions?

Mr. O'Malley: Objection: 704(b), Your Honor.

Mr. Abrams: Hypothetically.

The Court: Sustained.[1]

---

[*] Judge Robert S. Vance concurred in this opinion prior to his death on December 16, 1989.

[**] Honorable Jack T. Camp, U.S. District Judge for the Northern District of Georgia, sitting by designation.

[1]. After Dr. Frenzel's testimony and prior to calling psychiatrist Adolfo M. Villasuso, M.D. to the stand, defense counsel asked the court whether he could "ask him [Dr. Villasuso] a hypothetical opinion on the ultimate issue." Pursuant to

Appellant argues that by phrasing his question as a hypothetical, he was not attempting to elicit the expert's opinion on an ultimate issue in the case and, therefore, did not run afoul of F.R.E. 704. We disagree.

Rule 704 of the Federal Rules of Evidence provides:

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

(b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

In 1984, Congress added subsection b to Rule 704 in order "to eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact." S.Rep. No. 225, 98th Cong., 2nd Sess. 230, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3412. Congress designed Rule 704(b) to insure that juries, not experts, make the final determination on the issue of insanity. *United States v. Alexander*, 805 F.2d 1458, 1463 (11th Cir.1986).

Rule 704 was not amended, however, to eclipse the experts' role in enabling defendants to raise the insanity defense. *Id.* Rule 704(b) does nothing to alter this Court's long-standing tradition of liberally permitting the introduction of evidence on the issue of insanity. *Id.* at 1464. Psychiatric testimony may include the expert's diagnosis, the characteristics of the particular mental disease or defect, and the expert's opinion as to the defendant's mental state and motivation at the time of the alleged crime. S.Rep. No. 225, 98th Cong.,

2nd Sess. 230 (citing American Psychiatric Association Statement on the Insanity Defense, Dec. 1982, at 18), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3412–13.

Rule 704(b) merely forbids expert testimony on the ultimate issue in the case:

It is clear that psychiatrists are experts in medicine, not the law. As such, it is clear that the psychiatrist's first obligation and expertise in the courtroom is to 'do psychiatry,' i.e., to present medical information and opinion about the defendant's mental state and motivation and to explain in detail the reason for his medical-psychiatric conclusions. When, however, 'ultimate issue' questions are formulated by the law and put to the expert witness who must then say 'yea' or 'nay,' then the expert witness is required to make a leap in logic. He no longer addresses himself to medical concepts but instead must infer or intuit what is in fact unspeakable, namely, the probable relationship between medical concepts and legal or moral constructs such as *free will.* These impermissible leaps in logic made by expert witnesses confuse the jury.... Juries thus find themselves listening to conclusory and seemingly contradictory psychiatric testimony that defendants are either 'sane' or 'insane' or that they do or do not meet the relevant legal test for insanity.

S.Rep. No. 225, 98th Cong., 2nd Sess. 230 (quoting American Psychiatric Association Statement on the Insanity Defense, Dec. 1982, at 18), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3413.

Appellant argues that his use of a purely hypothetical question, which assumed facts not yet in evidence, could not constitute a violation of Rule 704(b). This Court rejects such a formalistic reading of the Rule: Courts cannot permit the use of the hypothetical question as a vehicle to circumvent the clear mandate of Rule 704(b). While none of the facts Dr. Frenzel was asked to assume had been introduced into evidence,

F.R.E. 704(b), the court denied counsel's request. On appeal, appellant also challenges this ruling.

the hypothetical question functioned almost as an outline for the defendant's entire case. After defense counsel's hypothetical was excluded by the court, he proceeded to elicit testimony proving each of the hypothetical's underlying assumptions. Through the testimony of mental health and counselling professionals, defense counsel demonstrated that his hypothetical person was in fact the defendant.

Dr. Frenzel, the first witness called by the defense, testified to her personal knowledge of the defendant and to her diagnosis of his illness only after the hypothetical was excluded. She indicated that she had been appellant's primary therapist at the MCC since January 28, 1988. She testified that she had observed Manley in depressive states and that he was suicidal during such periods. Dr. Frenzel also testified that she had learned from appellant's psychiatrist that both Manley's father and sister were diagnosed as having bipolar disorder. Thus, through Dr. Frenzel's testimony, the defense established that Manley had a family history of bipolar disorder and had himself experienced suicidal ideations. Each characteristic constituted a necessary assumption underlying the hypothetical.

The defense also called Reverend Francis J. Flynn, a Roman Catholic Priest and clinical psychologist who had performed a psychological evaluation of Manley at the MCC. Reverend Flynn testified that the results of a Minnesota Multiphasic Personality Inventory ("MMPI") test taken by Manley "showed a very very marked disorder in both mania and depression." Additionally, Reverend Flynn testified that Manley's father suffered from bipolar disorder and that the disease contains a strong genetic link. The Reverend disclosed finally, that Manley had admitted to using cocaine in an effort to control his mood swings. Thus, through Reverend Flynn's testimony, the defense established two more of the assumptions which formed the basis of the hypothetical: That Manley indeed suffered from bipolar disorder and that he abused cocaine.

Appellant's "pure" hypothetical was only pure because it was asked at the beginning of the defense case. The person described in the hypothetical was carefully identified, through testimony, as the defendant. Parties cannot circumvent the rules of evidence simply by altering the order in which they present testimony.

Moreover, appellant's reliance on the form of his question is misplaced. The crux of this issue is not appellant's use of a thinly veiled hypothetical but rather appellant's attempt to elicit the expert's opinion on the ultimate issue in the case. In *United States v. Davis*, 835 F.2d 274, 276 (11th Cir.1988), *cert. denied,* —— U.S. ——, 108 S.Ct. 2874, 101 L.Ed.2d 909 (1988), the court asked an expert in clinical psychology whether a person diagnosed with multiple personalities was capable of understanding what he was doing. This Court found that the question did not violate Rule 704(b) since it did not attempt to elicit the expert's opinion as to the ultimate legal issue in the case. The question was permissible because it sought an explanation of the disease and its typical effect on a person's mental state. *Id.* at 276.

Also in *Davis*, the prosecutor posed a hypothetical which tracked the facts of the alleged robbery then asked whether such behavior was indicative of an anti-social personality. The defense objected pursuant to Rule 704(b). This Court found that Congress intended to allow experts to testify fully about their psychiatric diagnoses and to opine whether the defendant's behavior was consistent with that diagnosis. *Id.* Once the expert confirmed that the defendant's behavior during the robbery was consistent with an anti-social personality, the jury still had to determine whether that disorder rendered the defendant insane at the time of his crime. *Id.*

Similarly, in *United States v. Edwards*, 819 F.2d 262, 264 (11th Cir.1987), the Eleventh Circuit found that the following questions did not violate Rule 704(b): "What sort of things were going on that would have depressed him? ... Were these feelings understandable, in your opinion?" Again, this Court concluded that the question elicited a general description of the disease, not an opinion on the ultimate legal issue. "The ultimate legal issue at Edwards' trial was whether Edwards

'lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.' [citation and footnote omitted] In fact, the challenged statements offer no conclusions at all about Edwards. Doctor Jaslow was simply observing that people who are not insane can nevertheless become frantic over a financial crisis." *Edwards*, 819 F.2d at 265 (quoting *Blake v. United States*, 407 F.2d 908, 916 (5th Cir. 1969) (en banc)).

Conversely, in this case, the hypothetical was specifically structured to elicit the expert's opinion on the ultimate legal issue in the case, the legal accountability of the defendant. 18 U.S.C. § 17 provides in pertinent part:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the defense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.

Defense counsel's hypothetical not only assumed facts which identified the defendant, but directly tracked the language of the insanity statute: "And would that person as described be able to appreciate the nature and quality or the wrongfulness of their actions?" In violation of Rule 704(b), the defense posed a question designed to elicit the expert's opinion on the ultimate legal issue. Whether such question was posed in the form of a hypothetical is immaterial. Congress drafted Rule 704(b) to prevent medical experts from opining on the defendant's mental state at the time of the alleged crime when the defendant has raised the insanity defense. "Such ultimate issues are matters for the trier of fact alone." Fed.R.Evid. 704(b).

## CONCLUSION

We conclude that the district court committed no error in excluding this testimony. AFFIRMED.