**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-20490**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**MARIA EVA ABARCA,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
For the Southern District of Texas
(H-98-CR-206-2)
_____
July 26, 2000

Before GARWOOD, DeMOSS and PARKER, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Maria Eva Abarca appeals her sentence, following the district court's assessment of three criminal history points for a state conviction that she contends should have been

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

characterized as relevant conduct of her federal drug conspiracy offense rather than a prior sentence justifying additional criminal history points. Because the district court did not err in its determination, we affirm.

## I.

On June 10, 1998, Abarca and several others were charged in a two count indictment with (1) conspiracy to possess with intent to distribute over 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846 and (2) conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). The indictment stated that the conspiracy to possess with intent to distribute occurred from November 1994 to September 1997. Abarca pleaded guilty to both charges on December 2, 1998.

Thereafter, a pre-sentence investigation report ("PSR") was prepared and filed with the district court. Abarca filed several objections to the recommendations in the report. Germane to the instant appeal was an objection to paragraph 59 of the PSR, which suggested that three criminal history points be assessed for Abarca's state conviction for delivery of a controlled substance. *See* U.S. Sentencing Guidelines Manual § 4A1.1(a). That state conviction concerned a cocaine sale on August 22, 1997, to which she pleaded guilty and was sentenced for five years on October 15,

1997.[1]  A second addendum to the PSR was filed, but it maintained the prior recommendation to assess the three criminal history points.

On May 19, 1999, after hearing argument from both Abarca and the government, the district court overruled Abarca's objection to the three criminal history point assessment and sentenced her to two 210 month sentences, to run concurrently with each other and with the state conviction.  Furthermore, Abarca was ordered to be placed on supervised release for a term of five years and fined $3,000 in addition to a special assessment of $100 per each count. This appeal ensued.

## II.

We review de novo a district court's interpretation of the United States Sentencing Guidelines ("Guidelines").  *See United States v. Reliford*, 210 F.3d 285, 306 (5th Cir. 2000).  But a district court's factual findings and its determination of what constitutes relevant conduct for purposes of sentencing are reviewed for clear error.  *See United States v. Wall*, 180 F.3d 641, 644 (5th Cir. 1999).

Under § 4A1.1(a) of the Guidelines, three points are assessed for each prior sentence of imprisonment exceeding one year and one

---

[1]Thus, at the time of her federal sentencing, Abarca was incarcerated in state prison.

month.  "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."  U.S. Sentencing Guidelines Manual § 4A1.2(a)(1) (1998). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is still a prior sentence if it was for conduct other than conduct that was part of the instant offense.  *See **id.*** application note 1. "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)."  *See **id.***  Section 1B1.3 of the Guidelines defines "relevant conduct" in pertinent part as:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B)  in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

Here, Abarca concedes that the sentence of her state conviction exceeds one year and one month, but she maintains that her prior state conviction concerned conduct that is part of her instant federal drug conspiracy offense and, therefore, should have been included as part of the relevant conduct of that offense rather than as a prior sentence.  For support, she notes that her

4

state offense for delivery of cocaine occurred on August 22, 1997, within the time frame of the existence of the drug conspiracy as alleged in the indictment. Moreover, because the PSR included as relevant conduct information about other prior cocaine sales during the existence of the drug conspiracy, she maintains that excluding the state conviction as relevant conduct was unreasonable, arbitrary, and illogical.

We find Abarca's arguments to be without merit. Although the PSR included statements about cocaine sales other than the August 22, 1997 state offense as relevant conduct and suggested that the amount[2] sold in those sales be converted to a marijuana equivalency and added to the total marijuana distributed, the district court specifically declined to consider the cocaine or to add its marijuana equivalency to the amount of marijuana distributed. The district court clearly indicated that it viewed the drug conspiracy charge as a marijuana conspiracy. The indictment charged Abarca and her co-conspirators as having conducted a marijuana, not cocaine, conspiracy. The limited nature of the conspiracy is further evidenced by the trial of one of Abarca's co-conspirators, which delved solely into the distribution of marijuana. Indeed, the district court revealed that if it had focused on the cocaine sales, then it would have sentenced Abarca to a longer term rather

_____

[2]The amount sold in the cocaine sales other than the August 22, 1997 state offense was at least four kilograms. The marijuana equivalency would have been 800 kilograms. *See* United States Sentencing Guidelines Manual § 2D1.1 application note 10.

5

than to the low end of the guideline range.

Even if the prior cocaine sales did matter and were considered to be relevant conduct, that does not also require the August 22, 1997 state offense to be viewed as relevant conduct. Although Abarca contends that treating the prior cocaine sales differently from the August sale is unreasonable and arbitrary in light of the time frame recited in the indictment, the critical inquiry as to whether certain conduct is not part of the instant offense and, thus, is not relevant conduct is whether the prior conduct constitutes a severable, distinct offense from the instant offense of conviction. *See* ***United States v. Thomas***, 973 F.2d 1152, 1158 (5th Cir. 1992). To make this factual determination, a district court may consider several factors, including temporal and geographical proximity, common victims, and a common criminal plan or intent. *See* ***United States v. Blumberg***, 961 F.2d 787, 792 (8th Cir. 1992) (citing ***United States v. Beddow***, 957 F.2d 1330, 1338 (6th Cir. 1992)). Although the drug conspiracy charge and the August 22, 1997 state offense overlap in some of the factors, particularly the identity of the victim, i.e., society, it is clear that delivery of cocaine is a distinct and severable offense from conspiracy to possess with intent to distribute marijuana. The two offenses have materially different elements. In addition, notwithstanding the time frame alleged in the indictment, the actual conduct underlying the entire marijuana conspiracy, as

6

stated in the PSR, ended by March 1997, several months before the August 22, 1997 offense.

Admittedly, perceiving the prior cocaine sales as relevant conduct while not doing so as to the August 22, 1997 state offense may seem at first to be unreasonable and arbitrary. But the prior cocaine sales noted by the PSR as relevant conduct terminated by March 1997, the same time the conduct underlying the marijuana conspiracy actually ended. On the other hand, Abarca's state arrest for delivery of cocaine did not occur until five months later. Thus, temporal proximity to the underlying conduct supporting the marijuana conspiracy just does not exist as to the August 22, 1997 state offense as it appears to exist with respect to the prior cocaine sales. Unless the prior cocaine sales and the August 22, 1997 state offense were part of a cocaine conspiracy count, which the indictment clearly did not charge, the time difference alone between the prior cocaine sales and the August 22, 1997 state offense suggests that they are distinguishable from each other and need not be both grouped as relevant conduct for the marijuana conspiracy. Accordingly, the district court did not clearly err when it assessed three criminal history points for Abarca's August 22, 1997 state offense.

## III.

For the foregoing reasons, the sentence of the district court

7

is AFFIRMED.