**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                                  No. 96-4570

EARL ANDERSON FRANKLIN,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CR-95-276)

Submitted: April 18, 1997

Decided: May 1, 1997

Before MURNAGHAN and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William E. Martin, Federal Public Defender, Gregory Davis, Assis-
tant Federal Public Defender, Greensboro, North Carolina, for Appel-
lant. Walter C. Holton, Jr., United States Attorney, Robert M.
Hamilton, Assistant United States Attorney, Greensboro, North Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Earl Franklin was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (1994), for which he was sentenced to 264 months imprisonment. Franklin's counsel has filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), challenging the sufficiency of the evidence and the district court's decision to upwardly depart in sentencing Franklin. Franklin has filed a supplemental pro se brief in which he claims that the district court erred in finding him competent to stand trial. Finding no error, we affirm.

Franklin was arrested at his home in High Point, North Carolina, on October 14, 1995. Officers from the High Point Police Department had gone to question Franklin in connection with a shooting incident several days prior. Franklin was carrying a loaded .38 caliber revolver in his left rear pants pocket. He was charged with being a felon in possession of a firearm.

A competency hearing was held on March 22, 1996, at which Franklin and the government produced expert psychiatric testimony. The government's expert, Dr. Scott Duncan, testified that, based on his personal evaluation and observation of Franklin and his review of Franklin's records, Franklin was malingering and, therefore, competent to stand trial.

Franklin presented the testimony of Dr. Raouf Badawi, a psychiatrist who had examined Franklin in 1993 and 1994. Badawi stated that, in his opinion, Franklin "developed a bipolar disorder, which progressed into a schizoaffective disorder." Based on his conversations with Franklin's mother and neighbors, Badawi testified that Franklin had behaved irrationally at times when there were no pending charges against him and, therefore, he opined, Franklin was not

2

malingering. Badawi also testified that Franklin had, at one point, been diagnosed as schizophrenic by a prison psychiatrist and placed on antipsychotic medication which greatly improved his behavior and demeanor. Badawi did not state, however, that Franklin was incompetent to stand trial.

The district court accepted Dr. Duncan's opinion and found Franklin competent to stand trial.

Franklin was tried by a jury in April 1996. Dr. Duncan testified for the Government as to Franklin's mental capacity and again offered his opinion that Franklin was malingering. Out of the twelve psychological tests administered to Franklin while at FCI Atlanta, Duncan stated that Franklin demonstrated symptoms of malingering in eleven. Dr. Duncan also observed Franklin in the courtroom and testified that Franklin's odd behavior (rocking back and forth, rubbing his hands on the table, and licking parts of his arms or fingers) was more pronounced when Franklin was in plain view of the jury. Duncan testified that although he had, at one point, entertained a diagnosis of schizoaffective disorder, he ruled out this diagnosis because he believed the productions or behavior exhibited by Franklin were consistent with a conscious production of such symptoms which were under Franklin's control. Duncan's final diagnosis was antisocial personality disorder and malingering.

Franklin presented the testimony of Dr. Gary Hoover, a forensic psychologist. Hoover testified that he saw Franklin"as an individual with schizotypal personality organization with paranoid themes, that he had frank and obvious antisocial behaviors, and that he was a highly dependent individual who had never learned adult independent skills." When asked if he thought Franklin was malingering, Hoover replied, "my conclusion was that he was not malingering, although it is only fair to say that there is ample evidence in his history of behaviors that can be consistent with malingering." Finally, Hoover was unable to say that Franklin could not understand the nature and wrongfulness of his actions.

Other witnesses testified on Franklin's behalf regarding bizarre behavior he displayed in the past. For example, police were frequently called by neighbors reporting strange behavior by Franklin such as

placing nails, pointed end up, in his yard to keep children out. Franklin was also seen on several occasions dressed in women's clothing or in clothing inappropriate to the season. One witness testified that, after his mother's death in 1995, Franklin did not bathe or change his clothes for approximately four weeks.

At the close of the evidence, the district court properly instructed the jury on the defense of not guilty by reason of insanity. The jury returned a verdict of guilty. Franklin appeals.

Franklin's attorney first challenges the sufficiency of the evidence to support his conviction. This court will affirm a conviction if there is substantial evidence, viewed in the light most favorable to the government, to support a finding of guilt. Glasser v. United States, 315 U.S. 60, 80 (1942). To establish that a defendant is guilty of possession of a firearm by a convicted felon, the government must prove beyond a reasonable doubt: (1) that the defendant knowingly possessed a firearm which had been shipped or transported in interstate commerce; (2) that before he possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term in excess of one year; and (3) that at the time the defendant possessed the firearm, his conviction had not been expunged or set aside, nor had he been pardoned for that conviction or had his civil rights restored. The evidence presented at Franklin's trial clearly established each of these elements.

Franklin's attorney next challenges the district court's decision to depart upward at sentencing. The probation officer calculated Franklin's total offense level at thirty-three. With a criminal history category of IV, the resulting guideline range was 188 to 235 months imprisonment. The Guidelines provide that the district court may depart upward where the criminal history score underrepresents the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit another crime. United States Sentencing Commission, Guidelines Manual, § 4A1.3 (Nov. 1995).

Departures are reviewed under the test set out in United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990). The district court's determination that a defendant's criminal history category inadequately represents his past criminal conduct is a factual question

4

reviewed under the clearly erroneous standard. Id. Franklin had only seven criminal history points which did not take into account over twenty-nine convictions, or the pending charges in state court, for which no criminal history points were assigned. Accordingly, the district court did not clearly err in finding that category IV did not adequately reflect Franklin's past criminal conduct.

The district court's decision on how far to depart is reviewed for abuse of discretion. Id. However, the district court should consider each succeeding category and depart further only after making a finding that the category does not adequately represent the defendant's past criminal conduct. See United States v. Rusher, 966 F.2d 868, 884-85 (4th Cir. 1992). The district court made the required findings in this case.

Finally, Franklin challenges the district court's finding that he was competent to stand trial. A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [ ] has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). The district court's finding that a defendant was competent to stand trial is reviewed for clear error. United States v. Hogan, 986 F.2d 1364, 1372 (11th Cir. 1993). On appeal, "the evidence relating to [the defendant's] competency must be considered in the light most favorable to the Government." United States v. Chischilly, 30 F.3d 1144, 1150 (9th Cir. 1994). We find that, in light of Dr. Duncan's testimony and the district court's ability to observe and question Franklin, its finding that Franklin was competent to stand trial was not clearly erroneous. See Id. at 1150 ("To the extent that [the district court judge], from his courtroom observations, assigned more weight to the Government's expert . . . he was acting within his discretion to do so as a part of his fact-finding and credibility-weighing functions.").

Franklin claims in his supplemental pro se brief that Dr. Duncan's findings were invalid because Franklin was not wearing his glasses during the testing and thus could not see well enough to respond properly to the questions. However, Dr. Duncan testified that, when administering tests to Franklin, he noted no visual impairment whatsoever. Duncan stated that it was his standard practice to determine

5

first if an individual has any difficulty reading, and if so, he administers the test via audio cassette. (Id.).

Franklin's pro se brief could also be interpreted as a challenge to the jury's verdict against him on his insanity defense. A defendant bears the burden of proving insanity by clear and convincing evidence. 18 U.S.C. § 17(b) (1994). A defendant is insane if he suffers from a mental disease or defect which makes him unable to appreciate the nature or wrongfulness of his acts. The Government provided sufficient evidence through the expert testimony of Dr. Duncan from which the jury could reasonably conclude that Franklin was not insane. The jury chose to credit the testimony of Dr. Duncan. We find this determination not clearly erroneous. See United States v. Freeman, 804 F.2d 1574, 1577 (11th Cir. 1986).

Franklin has filed "Motions for Further Ammendments [sic] to Appeal" in which he claims that he was denied effective assistance of counsel in that his attorney conspired with the government's expert witness (Dr. Duncan) to assure that Franklin would be found competent to stand trial. A claim of ineffective assistance of counsel is not cognizable on direct appeal unless counsel's deficient performance plainly appears on the face of the record. See United States v. DeFusco, 949 F.2d 114 (4th Cir. 1991). Rather, these claims must be raised in a habeas corpus proceeding under 28 U.S.C.A. § 2255 (West 1994 & Supp. 1997). Because ineffective assistance does not plainly appear on the face of this record, we deny this motion. In addition, Franklin has filed a "Motion for Supplementary Ammendments [sic] to Case on Appeal," in which he claims, again, that his attorney was ineffective and also claims that he was forcibly administered psychotropic drugs. Franklin's ineffective assistance claims may not be brought on direct appeal. See DeFusco, 949 F.2d at 114. And the portion of the record which Franklin cites in support of his allegation that he was forcibly medicated fails to support his claim. Accordingly, this motion is denied, in part, to the extent that Franklin seeks to bring ineffective assistance of counsel claims. The motion is granted, in part, to allow Franklin to bring his claim of forced medication. However, because we find the claim to be without merit, we deny relief.

We have examined the entire record in this case in accordance with the requirements of Anders, and find no meritorious issues for appeal.

6

The court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client. Counsel's current motion before this court to withdraw is denied. Franklin's motion for appointment of new counsel is denied as well. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7